Today's cases will be called, as previously announced, and the times will be as allotted to counsel. The first case today is number 22-1075, United States v. Mark Moffett. At this time, Attorney Pabian, please introduce yourself on the record to begin. Michael Pabian for Appellant Mark Moffett. You can begin. Before I begin, may I reserve two minutes of my time? You may. Five years ago, in United States v. Barilla, this Court warned against construing the aggravated identity theft statute in a manner that would render it, quote, virtually unlimited. I just want, I know that you want to talk about this issue, and that's completely your prerogative. I want to just make sure you do save some time to talk about the verdict slipped issue before you sit down. Yes, Your Honor, I do intend to talk about that as well. The Barilla Court explained that otherwise, if the statute were to be construed in that manner, it could apply a two-year mandatory consecutive sentence to, quote, every instance of specified criminal misconduct in which the defendant speaks or writes a third party's name. Here, the District Court's instructions regarding aggravated identity theft embrace just the type of expansive reading that the Barilla Court warned against and permitted Moffitt to be convicted for conduct that does not violate the statute. Was there a request for a different instruction on use? Yes, Your Honor. That's one of the issues that's raised in our briefs. We believe that all of these issues were preserved for de novo review. Counsel was in the midst of objecting to the duplicative nature of the two sets of charges, the wire fraud and the aggravated identity theft. The Court interjected and said, quote, I'm not going to change anything, and indicated that the defendant's rights. Yeah, but with respect to the duplicative issue, but there wasn't a request for a specific new instruction on use. There was not, Your Honor. However, it's our contention in the briefs that the Court's active interjecting. If we disagreed with you on that, what follows? Can this challenge work? Yes, Your Honor. It's our belief, first of all, that the arguments are preserved, especially the lawful authority issue, because we believe that the objection to the duplicative charges. I understand that, but on the use one that you just started with, if that was preserved. Yes, Your Honor. So we do believe that there are clear errors here, each of which independently requires that the convictions be vacated under any standard of review. Let me ask you about the instruction. You objected, or your predecessor, but did not offer a different instruction to the Court. So how does that affect your case? Yes, Your Honor. The judge can't just, you know, you can object to the instruction and say, Judge, I disagree with the instruction, but if you don't offer an alternative to the judge, how is the judge supposed to, you know, come up with something? In this case, Your Honor, I don't believe that the failure to proffer a specific suggested instruction changes the analysis. But one thing, again, counsel was cut off in the midst of articulating the objection. So it's not clear whether instruction would have been offered. Secondly, as I said in response to a prior question, we believe that the reference to the duplicative nature of the charges clearly invoked this lawful authority issue. But what about, you're shifting, because I thought you were talking about the use. Well, Your Honor, Baroah specifically dealt with the issue of use, but I believe that it's indicative of. But just stick with me. So are you saying that there was an error by not giving a better instruction on use? Yes, Your Honor. That is our contention. And what's the instruction that you wanted that wasn't given? Simply the instruction from Baroah. And was that asked for? It was not specifically, Your Honor. Okay. And if there was a failure to ask for it, then to respond to Judge Helpy's question, what follows from that failure? I believe, Your Honor, that the court should still find the issue preserved, given the exchange with counsel and the court's act of cutting counsel off. And what would the instruction then have been that you're saying should have been given, given that none was requested? The instruction would be precisely the language from Baroah that in order to be found to have used a means of identification within the meaning of the statute, the defendant must attempt to pass him or herself off as another person or to take some other action on that person's behalf. Now, it's not my intention today to argue that use issue in detail. We've laid it out in the briefs. The two errors that I want to focus on with respect to the aggravated identity theft charge, of course, subject to any questions the court might have, are, one, that the district court precluded the jury from considering the explicit offense element requiring the absence of lawful authority, and, two, that it permitted the jury to convict Moffitt for aiding and abetting the doctor's use of their own identities, which is not a crime. The district court clearly erred by instructing the jury that a finding of wire fraud necessarily relieved the government of its independent burden to prove that the alleged use of identifying information was, quote, without lawful authority. We believe that the instruction was directly contrary to the binding precedent of this court. In United States v. Kassenj, the court said, quote, it takes little imagination to conceive instances in which a person might use another person's means of identification. During and in relation to a predicate offense in a manner that would be lawfully authorized. We submit that there's simply no way to square this language from Kassenj with the instruction that was given here. The instruction also violates the well-established canon of statutory construction that this court recently reaffirmed in United States v. Chin, and that's 41F416, an opinion by Judge Barron, quote, all words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant, or superfluous. Counsel, if I may. This entire line of argument was prefaced with your request that we take your use argument as having been preserved. Earlier you said it didn't matter what standard of review we used, because you thought it, even if not preserved, it was plain error. Okay. Now, we've heard your argument on the assumption it was preserved. Do you have anything that would assist us on the plain error standard if we think it was not preserved as to use? Yes, Your Honor. Your Honor, just to be clear, there are three errors that we assert occur with respect to- No, I want you to focus on use, please. Yes, and I'd be happy to do that. I just want to make clear that the lawful authority error that I've just been discussing we view as an independent basis for vacating the convictions. Would you answer my question, please? Yes, Your Honor. In response to your question, we do contend that the use issue was preserved. Even if it was not preserved, we do believe that a plain error occurred and that there was a clear error that was prejudicial. United States v. Baroa was decided five years ago. It held that the statutory language, use, was facially ambiguous. That's the only language that this jury was provided. And furthermore, the Baroa court said that if given its broadest possible interpretation, the term use could essentially lead to absurd results. And any time that someone is committing a crime in which he or she speaks or writes a third party's name, that person is getting a two-year mandatory consecutive sentence added for aggravated identity theft. Yes, you've argued that. Could you turn to the verdict form? Yes, Your Honor. The district court abused its discretion by referencing specific government exhibits in the verdict form. The court's use of this verdict form. Can you get right to the prejudice question, harmless error? The government argues harmless error. Yes, Your Honor. So what's your response to that? Well, my first response to that is as the D.C. Circuit Court recognized in the Miller opinion as cited in our briefs, deciding harmless error is very difficult in this context when it involves the imprimatur of the court. Here we have the court specifically. Well, the government says it's not that hard because if all it is about is whether the wires were used, there's no dispute about that, so it couldn't have been a problem. Are you saying that the content of the exhibits was such that it's not clear that the only thing that the reference to the content of the exhibits would implicate is whether wires were used? Yes, Your Honor. That's absolutely one thing we're saying in response to that. And, in fact, I think it's helpful to go back to how the court initially described these exhibit references to the jury. It said that the exhibits were what the government considered to be, quote, the evidence of the particular crime being committed. As we've laid out in the briefs, many of these exhibits contain the very representations that the government alleged were false and that were the subject of extensive testimony at trial by the government. We submit that providing the jury with a verdict form, that in order to render a verdict against Moffitt, require the jury to review those 10 exhibits cherry-picked from a set of over 100, unfairly tilted the scales in the government's favor. Didn't the judge give an instruction that he was providing these exhibits, but he gave an instruction that was a neutral use instruction as to that. He wasn't saying this is exactly what you have to do. These are just examples of these 10 counts, and this is what the government purports to prove. But he didn't say this is X, and you take this for granted. Your Honor, that's certainly right that he left it up to the jury how to evaluate these exhibits. But I think what the Miller opinion stands for is that his mere fact of intentionally or unintentionally directing the jury to these specific exhibits the government unilaterally identified as supporting its case is in itself prejudicial. And the theory is because it directs them away from other evidence that might have been exculpatory? Yes, and specifically to evidence the government selected presumably because it believed them to be inculpatory. And Your Honor hits on an important point. Just so I understand it, the idea is that the problem with the slip, even when there's instruction that says you're free to decide what you make of this exhibit, is that it tilts the playing field by saying, but when you make that decision, which you're free to make, make it based on this exhibit. That's the concern. Yeah, and it's something to the effect of the court said the government suggests that you start here. The court, it was not the court's place to direct the jury. As I read it, it says that's what they suggest, it's not what I suggest, but this is so that you'll look there in order to do your analysis. Yes, that's precisely the language I'm referring to, Your Honor. And what you're suggesting is that even with that, we call it curative instruction by the judge, it tilts the balance to the government's side. That's what you're arguing, correct? It is, Your Honor. And I think the important point to keep in mind is that this was entirely one-sided. Moffitt had no opportunity to pick other exhibits to include in the verdict form. We've cited exhibits. And this was objected to? Yes, Your Honor, both in a written objection and orally at the time before it was going to be filed. The standard here is abuse of discretion, correct? Yes, Your Honor, that's correct. And what's the consequence if you're right about this? Does it mean every conviction would be vacated? Yes, Your Honor. This verdict form provided exhibits in support of every single conviction, all 15. It unfairly, we contend, provided a road map for the jury that would have been more appropriate in a government opening or closing argument. I'm not aware of any precedent for a verdict form like this, and the government cites none. The result of this one-sided presentation was functionally similar to the selective readback and testimony which this Court has found problematic in both Rivera-Santiago and the Almonte cases cited in our briefs. And the government's claim that the structure was somehow necessary for the jury to understand the case must fail in our view. There are many complicated trials in this circuit, and the government doesn't point to a single similar form. In short, the government was responsible for proving each and every count that it decided to bring in a manner that would be intelligible to the jury. It was not the Court's role. Counsel, if I may, just factually, as I understand it, Judge Young directed the government to come up with the exhibits that showed the interstate commerce connection. Is that what happened? And then he gave instructions that were inconsistent with that limited purpose. You say he instructed that the exhibits were evidence of the crime being committed. Yes, Your Honor. So there were three statements. Factually. There were three statements that the Court made about this. The first was the request for the government to select the exhibits. I can't frankly recall the exact language the Court used. May I finish your response to this question? Yes, you may. I don't recall anything as specific as Your Honor just posited, that it related specifically to the wires. I could be wrong on that. The second statement was in its initial instructions to the jury. The Court said that this was the evidence of the crime being committed, and that's the passage that Judge Barron just read. The third time it came up was after Sidebar and the government pointed out that the exhibits were intended to reflect the wires and uses. The Court issued what it viewed as a curative instruction that they were provided to show. I think it said something to the effect of the documents going over the wires. But crucially, the Court never limited the jury's consideration to that analysis. So unless the Court has any further questions, I'll rest until rebuttal. Thank you. At this time, would Attorney Eisenstadt please introduce herself on the record to begin? Good morning. May it please the Court, Karen Eisenstadt for the government. I'd like to start with the verdict slip issue that the Court was just talking to counsel about. Under this Court's precedent, this Court did have the discretion to give the jury a copy of the indictment with appropriate instructions, that is, just allegations. If the Court looks at a copy of the indictment, that's in the Joint Appendix, pages 21 to 23, there are certain tables in which the grand jury has alleged document by document what the alleged wires are for each of the nine separate wire fraud counts and then also what each of the alleged uses are for each of the six aggravated identity theft counts. So what you're saying is that even though the indictment was not provided, the language of the verdict form, it detracts the indictment, regardless if it was a government exhibit or whatever, it's what's in the indictment, correct? That's correct. So if you compare that with the verdict form... But the indictment's not in the name of the Court. Right, so... That's a pretty big difference. Yes. So just to sort of set the background, the Court is dealing with a situation where it doesn't want to give the jury a copy of the indictment. And as Judge Helpe mentioned, essentially, rather than giving them the language of each allegation, sort of characterizing the documents, those are then telescoped into the exhibit numbers that are on the verdict form. So that's the context. Everything turns on how it's done. There's certainly ways you could do that you would concede are a problem. Then there are ways that you could do it that the defendant would concede is not a problem. So the question is, was this way of doing it a problem? Correct. So the government's contention is that this is within the Court's zone of discretion in terms of helping the jury obviously need some way to differentiate the counts and identify what the wires and uses are that are the elements that must be proved. Because, of course, there's many... Counsel, would you agree that if it could be perceived as the Court putting its thumb on the scale and appearing to favor the government by its reference to these exhibits and the instructions both given and the failure to give a limiting instruction, that if it could be perceived as the Court putting a thumb on the scale explicitly in favor of the government, that that would be an abuse of discretion? Yes, I think if the Court views it as equivalent to commentary in which the Court is distorting the evidence or putting influence more on the government side of the case versus the defense side of the case, that would be abuse of discretion. However, it clearly wouldn't have prejudiced the defendant in the circumstances of this case. So it's clear the fact of these wires and uses was not contested. So the defendant admits as much in his reply that he did not contest the fact of these wires and these uses. And it's more than just that. It's also that they're not rationally contestable. So his own theory of the case that he's arguing to the jury in his closing argument is that it's my job to help with the paperwork. He affirmatively embraced that these wires and uses had, in fact, happened. He argues that he didn't know there was falsity in them, but he didn't argue that they didn't happen because his theory was that they did. Did the closing arguments take place after the jury instructions were given or before the jury instructions? Before the jury instructions were given. Okay, so then the defense counsel did not have an opportunity perhaps in his closing to address that point or explain, you know. Well, they were aware of what the verdict form was going to be. That had been hashed out before closing arguments occurred. They had quite objected to it. And they said to the judge, in essence, we think you're assisting the government here. And after all, the judge did not ask the defendants for any list of exhibits, only the government. So that's correct, but I think it's helpful to realize that what the judge is trying to do is to duplicate the allegations in the indictment. There is only one set of allegations in the indictment, and there's no dispute that these are the documents that are the ones alleged. Suppose the judge said, to figure out whether there's a crime, look at the indictment. Focus your analysis on the indictment. Would that be permissible? I think that would not be correct because you need to explain that those are allegations. Okay. And then if you said here, that's what they suggest. It's not what I suggest, but this is so that you'll look there in order to do your analysis. There is at those exhibits. Well, doesn't that suggest don't look at the exculpatory evidence outside those exhibits? I think what the court is saying is that's how you understand what conduct in this case is. One way to tell what the court says is to focus on what it said. Right, right. So what it said is, this is so you'll look there in order to do your analysis. In order to do your analysis as to which each count is. No, it doesn't say this is in order to do your analysis of whether there's a crime. So the court clarified after the charge objections that what these are is the documents that supposedly went over the wires, which is, you know, what it is that differentiates each wire fraud count. Otherwise, you know, we have a myriad patients, doctors for each many wires, and there's only one that actually is the one alleged. Shouldn't that be, though, the job of the U.S. attorney in his closing argument saying, for this count, these are the documents in support. For X count, these are the documents. And what I'm getting at is, didn't the, you know, my question is, didn't the judge basically assume part of that rule, which should have been, you know, the government's, you know, in the closing argument. I think that ignores what this court has said and the Supreme Court has said about the district court's role in a jury trial. So the court is the governor of the trial, not the mere moderator. So I think, you know, the court can ask clarifying questions if it thinks counsel's questions aren't quite, you know, hitting the mark and the jury's not going to understand. The case law from this court, and I sat for 15 years in district court, it's very clear. You have to be very careful. If I ask clarifying questions, you have to sort of tell the jury it's not meant to go one way or another. And you have to be careful because sometimes judges, when they've been reversed, they go too far asking clarifying questions or sometimes it can be an inadvertent mistake, but buttressing the government's argument, and those are the sort of cases that have been reversed in the past. So, again, the judges have to be very careful not to step over that line. Correct. There's absolutely a line. And I think Judge Young did say multiple times, all the facts are for you to decide. These are, you know, what they, the government, say, not what I say. So he did do that. But, again, I'd like to get back to the no prejudice. Here's the key thing. There's no doubt he didn't say you have to take as true the exhibit. That's clear. The concern that they're raising is what he did is he said focus on the exhibit to determine whether there's a crime. Your response to us so far has been what he was saying was focus on the exhibits to determine whether wires were used. Right? Correct. Correct. And he corrected himself on that. What's the clearest statement you can point to where he made clear to the jury that they were supposed to focus on the exhibits solely for the purpose of determining whether wires were used? There was a statement made to the jury after the government asked for a clarification on this point, specifically that, you know, I had said earlier that these are the evidence of, but, you know, they're actually the documents that, quote, supposedly went over the wires. I don't have. Yeah, I have. Is that this? I think it's, I said I'm trying to be helpful. I pointed out that on the reference to a specific exhibit was what the government says is evidence of the wire fraud or the aggregated identity theft. That's the sentence. So that's not helpful to your point. But then it says more specifically it's pointed out that that is the document that supposedly went over the wires. There may be other documents that they claim is evidence, not qualified as to what he means by evidence, but that's supposedly the document that went over the wires. So I guess I'm just having trouble seeing where in that, where in context of the prior paragraph there's a crisp statement to the jury saying you are to focus on this solely for the purpose of determining what went out on the wires, not to look there for evidence of the crime. Well, I don't think limiting that, because these are, in fact, exhibits that were admitted as evidence for whatever the jury wants to consider them for. So I don't think it would be that the court would say you can't consider these exhibits with any other exhibits when you're assessing any other aspect of the crime, because they are just evidence. I think what the court was trying to say is the reason they're on the verdict form is because, you know, these are the ones that identify those wires and uses, and the government does have a burden to prove beyond a reasonable doubt the specific wire use that it charged, not, you know, one of the myriad other ones that are in evidence. Are you aware of any case within the district, circuit, or even nationally, where something similar to this has happened? Because, again, I have to say I have never seen, you know, anything like this happening before. No, I did not. It was a first impression issue. Right. I didn't find anything that I thought was closely analogous to cite to the court as an example. But getting back to the issue of prejudice, so he also says, well, there's some, some of these exhibits also had false information on them. He's not prejudiced by that, and I think it's important to recognize that either way they, of course, have to look at all the evidence to determine if there is falsity, and more importantly what he's contesting is whether he knew that. The court didn't point them to these documents for that purpose, and furthermore, the documents aren't facially. Just separating out two points. If he didn't point them to that evidence for that purpose, that obviously does mitigate the concern. But for the harmless error issue that concerns me, what I'd like to know is if he did point them to those documents for that purpose, is it still harmless? I say yes, because there's nothing in here that's facially false. The documents aren't facially false, or, of course, the fraud would not have worked on the insurance companies. The only reason we know they're false is because of all the other evidence in the case, the testimony from the doctors, the medical records, the patients determine that, in fact, they did not have this diagnosis. So simply looking at that document doesn't tell you anything as to whether the statement is false or not. It simply is the statement that was made to the insurer, and that, of course, is not contested because these insurers were, in fact, reimbursing these patients for having HOFH and taking junk spit for that specific disorder. So that aspect of it is not contested. The falsity is coming from everything else in the case, but the documents actually answer nothing about whether the statements are false. So the idea that once you open the – the only way this could be prejudicial is if you considered evidence beyond this document. Then there's no reason to think the jury had the misimpression that it couldn't look at even the exculpatory evidence. That's the idea? Right. I mean, to the extent the jury's looking at them for falsity, it doesn't actually answer that question, right? They have to look at the whole case to understand if these are false. And, of course, importantly, Mr. Moffitt's defense is, I didn't know that. Of course, there was no statement in the instructions and certainly not on the verdict form. You have to also look at other evidence, including the defendant's evidence, that the issue of falsity that the government has not proven evidence. So we have a problem both with the instructions given, the instructions not given, the fact that the initial instructions refer to this as evidence of the crimes without limitation. Then there is a later statement trying to focus it a little bit more on the jurisdictional interstate commerce use of wires. But even that is not explained in context. And we have the fact that, for whatever reason, the judge chose simply to point to government evidence. So I think I would just want to add two points in response to Judge Lynch's statement. Not only were these documents not facially false, which I think counsel would agree with, but falsity was not really contested. That's not what this case was about. These patients did not actually have this disorder, and the doctors did not diagnose them with that. I think that's crystal clear, and he wasn't in a position to argue that that wasn't true. His argument here was about whether he knew that, and that has nothing to do with these exhibits and everything to do with the rest of the trial. This was an intent-based defense, and he didn't bring in his own medical experts to say, I actually think they did have HOFH or find anything in any of their medical records that indicated they did. And there's nothing showing any of them got that diagnosis. Earlier you argued to us that falsity was a major portion of the defense. I understood it then to go to he thought he had authorization one way or the other. So I'm not sure this quite gets you off the hook. I think there's two different types of falsity here. So that's about authorization. This is purely the question of whether it was false in these documents that the patients had this rare genetic disorder called HOFH. That's the only type of falsity addressed by these documents at all, because some of them were insurance documents that did purport to represent they had that. I want you just to spend one minute. Your time is going to expire, but I want you to spend at least a minute on the use question. And here's how I would like you to address it for me. Let's assume it was not preserved, and so we're on plain error. And let's assume Baroa held that just the facial use of the word use is facially ambiguous. And then we said that would create all kinds of problems, but we can construe it in the following way that avoids those problems and therefore construe it that way. In that circumstance, is it permissible going forward for a district court to just say use without giving the limiting construction? Because that strikes me as potentially concerning, where we've already identified a language that just on its face you couldn't know what it means and you might think it means something very problematic. We then save it by giving it a narrowing construction. But if district courts then in the wake of that just give the facial use instruction, doesn't that just replicate the very problem that the narrowing construction was intended to solve? So what's the government's view of that? Okay. So as to the use issue on plain error review, I don't think Baroa held necessarily that this needs to be given as an instruction to the jury. That wasn't the issue in Baroa. There wasn't any factual dispute about what the use was. It was purely a legal dispute about whether that use qualifies under the statute. But I think more importantly here in deciding this case, because it is on plain error, he needs to show that he was prejudiced by this, and he can't do that. He doesn't identify any prejudice other than in his initial brief ignoring half of Baroa's holding and just focusing on the impersonation aspect. As I understand the prejudice, the prejudice is they could have thought the most expansive thing about use, which we said if you thought would be a very problematic legal understanding to have. I think it would be a problematic interpretation of the statute. But in the context of this case, there's only one type of use at issue. So it's not like, you know, we're looking at all theoretical types of uses. I'll ask it one last way. We identified a way of construing use in Baroa that if it were the understanding, it would be extremely expansive, correct? Correct, yes. If a judge gave that description of use, that would plainly be error, correct? To the extent Baroa— If he gave the exact construction of use that we said in Baroa would be too expansive, that would be error, correct? Yes, yes, yes. What makes it clear that by just using the word use, the judge did not give that expansive instruction? I think it needs—the jury instruction needs to be evaluated in the context of the circumstances of the case. So what was at issue in Baroa was doctors who had obtained medical licenses through fraud, and then the use alleged was the use of the patient's names on prescriptions they're writing years later for patients. And the fraud was, you know, they weren't doctors in the first place. And he tries to say that's in any way analogous to this case, but it's not. You know, here, the use alleged isn't the patient names, but the doctor names. Thank you. Anything further from either— Yes, one question. Let me just quickly go back to the verdict form. And my question is, even assuming—again, there's no issue about the evidence per se, but my concern is if we were to rule in the government's favor in this case, doesn't that open the door for any district judge within the circuit to start with the verdict form, pinpointing particular evidence that parties are objecting to or stipulating? And it could also happen the other way around. It could be, you know, that benefits the defense. That would affect the government. And if somebody's acquitted because of that, you can't even appeal that. Isn't it the better practice, you know, going, you know, that this not be allowed as a practical, you know, matter? I think that's why the government is pushing a harmless error argument also, that to the extent there was an abuse of discretion, this is not something that district courts should be doing, that in the context of this case, it is a harmless error because he's not contesting those. Do you agree that the government would agree that this is something district courts should not do? I think, you know, it certainly would have been better if the district court didn't do it. You know, so this is not something, of course, the government asked the district court to do, and it's not. Judge Lynch? So I've been wondering why government counsel didn't say to the judge when he came up with this idea, gosh, judge, we don't think that this is a very good idea. We may not totally agree with the defense objections, but we think you may be on the path to error. And the conclusion I drew was the government didn't do that because they thought they were getting an advantage in the case from this. So here you are on appeal, and I think you just responded to Judge Helpy. No, this verdict form should not have been used, and that's why we're arguing harmless error. Any comments? I disagree with that interpretation of what government counsel did. I think government counsel was told by the judge, you know, just give me the exhibit numbers that work with these allegations in your indictment. They provided them to the judge. But the judge is still giving the jury instructions. Once the jury instructs, it's ten counts. So maybe after the first count, you know, maybe government counsel could have said, judge, could we approach the bench? We're concerned that this X, Y, or Z. You should not point that. And again, it may have been, could have been a mistrial as to one count. It could have been our judge, you know, might have to dismiss that count, or an appeal that would have been asked to only one count. But now we're focusing on the ten. It happened ten times. Well, it was done in the verdict form, so it was not. This wasn't done in the presence of the jury. It was, you know, after a trial. But the jury is getting it. Right, right. The jury got a copy of it. But in terms of the circumstances in which the government was asked to do that, that was, you know, at the end of one of the trial days. And they came back and gave the judge, you know, the exhibit numbers the judge wanted. I disagree that the court, the government was thinking, oh, we get an advantage of this for this, so let's just let the judge do it. I think government counsel probably didn't recognize the problem here because they were thinking of this as this is, you know, he's transferring the indictment. Let me say this. Again, my experience presiding over trials, again, I don't think the government is going to say, oh, you know, in my experience, I have a fair advantage, but let me just shut up. But I've had prosecutors who come up to me and judge, I think the instruction you gave or about to give is wrong, and this is, you know, and there are officers in the court also. They're supposed to help the court as well. And I guess here it didn't happen. Again, I'm not saying somebody did it purposefully, but it did happen. Can I just make a closing comment for one minute? Right. So I think what government counsel did is they missed the issue, but you can see that, for example, in the charge objections, they raised the issue of like you just said this is like evidence of, you know, the offense or something. Really it's supposed to be the documents that went over the wires. So they did try to rein it in, I think, once the judge was charging because they saw that, you know, the judge didn't sort of precisely say what he had told them he was going to use it for. So they pointed out this is the unit of prosecution. That's what you should be telling the jury. And my last point, I think, is he was trying to argue, you know, some of these documents contain false statements. To the extent that's the basis by which the court feels like there's a problem, I think counsel should identify which of those those are because he had asked for a remedy that overturns all the counts, but I don't think that issue applies to at least a number of the counts such as the ones where the document was simply referencing a phone call that had occurred and there's nothing false in that. So I'd just like to say that as a last point. Thank you very much. Thank you. We just have one moment to locate something. Judge Lynch, are you able to hear all the proceedings? I am. Okay, terrific. Yeah. Thank you. At this time, would counsel please reintroduce himself on the record to begin? It seems to me that you're hearing everything, but I just wanted to make sure because the monitor was showing something different. Michael Patvian for Martin Moffitt again. Just to respond to that last point, we've cited several of these exhibits which have false representations according to the government in our reply brief, and moreover, given the imprimatur of the court, I don't think the government can seriously contend under the harmless beyond a reasonable doubt standard that pointing to four or five false statements that a defendant allegedly made in the verdict form makes it harmless as to two or three additional documents that maybe don't on their face contain false. Why if they're different counts? Why wouldn't we have to do it at count by count harmless? I think the analysis does certainly have to go count by count. So is the document exhibit referenced as to each count? Does each one contain something more than just evidence that the wire was used? Every one contains more than that the wire was used. Yes, that's absolutely true. These are exhibits, and again, there's far more than what's in the indictment. The government says that this is just like the indictment. I quoted in my brief an example of these allegations from the indictment. Quote, call from PAP employee in Massachusetts to patient two in Illinois. Transfer of call with patient two to pharmacy in Missouri to arrange for fill of prescription of cholesterol drug. Clearly, the indictment did not contain the documents themselves. What's in that that's prejudicial to you? Well, that's the indictment. There's a whole set of call notes. Just give me an example of what's in one of the documents that you say is prejudicial. There's an example of these letters that were submitted. There were several of the documents, exhibit 66, exhibit 77. They contain allegedly false diagnosis information, allegedly false prescription information. The government introduced extensive trial testimony that the signature line in some of the doctor's names was false. And the suggestion that because the documents were not false on their face, they're not prejudicial, I think has to fail. Because what you're saying is that they contain information beyond the allegations of the indictment. It can be a particular date, a particular overt act, but then they have XYZ or this, you know. But what is the answer to the government's view that, well, there's no way the document itself could have been the source of the conclusion that your client was guilty? Because on its face, it's just a reported statement of fact. It's not. So the only way that the juror could know that it was is if the juror started looking at evidence beyond the document. But if the juror, to find guilt, had to look beyond the document, what's to say they weren't looking at the exculpatory evidence? So what's the reason to think the actual instruction and use of the verdict form directed them in a way that caused prejudice? So I think the important thing to keep in mind is that all of these exhibits, all of them, were the subject of extensive trial testimony. We've cited excerpts of that trial testimony in our brief. Much of it was very prejudicial to Mr. Moffitt. I don't think that the jurors can reasonably be expected to simply remove that from their minds when they're reviewing a verdict form, the very document that they would use to render their verdict against Mark Moffitt. That very form did not reference a single defense exhibit. And respectfully, we don't believe that the government exhibits should have been given the sole priority and should not have been referenced. And for that reason, unless there are further questions, we'll rest. Thank you. That concludes argument in this case.